938 A.2d 938 (2008)
397 N.J. Super. 574
Tyrell HARDY, by and through his Guardian ad Litem, Vera DOWDELL, Plaintiff-Appellant,
v.
Hamza ABDUL-MATIN,[1] Merrick L. Harris, Public Service Electric and Gas Company, and Joseph M. Kulak, Defendants, and
Liberty Mutual Insurance Company, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 2007.
Decided January 2, 2008.
Randi S. Greenberg argued the cause for appellant (Law Office of John P. McGovern, attorney; Ms. Greenberg, on the brief).
Raymond Kramkowski argued the cause for respondent (Law Offices of Linda S. Baumann, attorney; Mr. Kramkowski, of counsel and on the brief).
Before Judges AXELRAD, PAYNE and MESSANO.
The opinion of the court was delivered by
*940 PAYNE, J.A.D.
This case raises issues of insurance coverage for a passenger injured while riding in a stolen vehicle who claims that he was unaware of the status of the vehicle.
Plaintiff, Tyrell Hardy, a fourteen-year-old back-seat passenger in a stolen car, involved in an accident that resulted in injury to all of the car's occupants, sought personal injury protection (PIP) and uninsured motorist (UM) benefits as a family member covered under an automobile insurance policy issued by defendant Liberty Mutual Insurance Company to Hardy's grandmother, Vera Dowdell. Despite Hardy's position that he was unaware of the status of the car, the motion judge granted summary judgment to Liberty Mutual on Hardy's claim, finding that policy provisions excluded coverage in the circumstances presented. This appeal followed.
The record discloses that Hardy was severely injured on the afternoon of October 20, 2004, when a stolen Subaru Imprezza in which he was riding, driven by sixteen-year-old defendant, Hamza Abdul-Matin, was involved in a front-end collision with a Public Service Electric & Gas (PSE & G) Company truck at an intersection in East Orange. As the car burned, all vehicle occupants were pulled from the car by onlookers. Hardy suffered a number of injuries, including a broken leg, a displaced pelvis, fractured facial bones, and cuts and bruises, requiring a hospitalization of approximately one month. The front seat passenger, twenty-four-year-old Alquan Edwards, did not survive his injuries.
The driver, Abdul-Matin, although sustaining a compound fracture of the left femur and head lacerations, initially escaped from the scene with the assistance of friends, but later was apprehended when he sought medical assistance, claiming that he had been hit by a car while a pedestrian. Abdul-Matin ultimately pled guilty to one count of second-degree aggravated assault, N.J.S.A. 2C:12-1b(1), downgraded to a third-degree crime for purposes of sentencing, to one count of third-degree aggravated assault, N.J.S.A. 2C:12-1b(7), and to one count of third-degree receipt of stolen property, N.J.S.A. 2C:20-7. Hardy was not charged with any crime.
Hardy claims little recollection of the circumstances of the accident. In a deposition conducted after Liberty had moved for summary judgment, Hardy admitted that his girlfriend was the sister of front-seat passenger Edwards, whom Hardy had known for approximately two years. He claimed less knowledge of Abdul-Matin, a friend of Edwards, seen by Hardy "around my ways sometimes." Hardy denied knowledge of Abdul-Matin's address, age, family, or school.[2] Hardy also denied knowledge that the vehicle in which he was riding was stolen, and he denied recollection of any of the circumstances of the accident, including its date, time and location. He also denied knowledge of where he had entered the car, and could not explain why he required a car to reach a luncheonette that was located within a block of his house. Hardy testified that he had never been in the car previously, and he had never seen either Abdul-Matin or Edwards in the car before. Hardy did not ask either person who was the owner of the car, and he denied knowledge that either had been arrested previously for stealing cars. Additionally, Hardy denied *941 noticing whether Abdul-Matin had car keys, whether the ignition lock was intact, and whether any car windows were broken. The prosecutor's office investigatory report indicates that Abdul-Matin and front-seat passenger, Edwards, were known by a witness as car thieves, and that the car was estimated by the PSE & G Company truck's driver to have been traveling at an excessive rate of speed of approximately eighty miles per hour when the collision occurred.
Liberty Mutual concedes that at the time of the accident, Hardy was insured as a family member under auto coverage issued by it to Hardy's grandmother, Vera Dowdell, with whom Hardy lived. The PIP provisions of Liberty Mutual's policy exclude PIP coverage for any insured: "Operating or `occupying' an `auto' without the permission of the: (1) Owner of the `auto' or (2) Named insured under the policy insuring that `auto.'" The exclusion mirrors the text of N.J.S.A. 39:6A-7, as it was amended by L. 1983, c. 362, § 10. Read literally, neither requires evidence that the claimant knew or should have known the car to be stolen in order for the exclusion to be triggered.
The policy also provides UM coverage under an insuring agreement that states:
We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" . . . because of:
1. "Bodily injury" sustained by an "insured" and caused by an accident
. . .
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle". . . .
An "uninsured motor vehicle" is defined, in relevant part, as:
a land motor vehicle . . .
1. To which no liability bond or policy applies at the time of the accident.
* * *
3. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:
a. Denies coverage. . . .
The UM provisions contain an exclusion for "`bodily injury' sustained by any `insured': . . . 5. Using a vehicle without a reasonable belief that that `insured' is entitled to do so." The UM exclusion thus contains a scienter element that is missing from the PIP exclusion.
Claims for PIP and UM coverage were submitted to Liberty Mutual on Hardy's behalf. In a letter dated November 14, 2005, Liberty Mutual denied UM coverage on the ground that it was barred by its exclusion from coverage of persons using a vehicle without a reasonable belief of entitlement to do so. PIP coverage was also denied.[3] Suit to compel UM arbitration and PIP payments ensued.[4] *942
Shortly after suit was filed, Liberty Mutual moved for summary judgment. In granting that relief, the motion judge held that PIP benefits were barred by the policy's exclusion from recovery of "any insured operating or occupying an auto without the permission of the owner of the auto," regardless of whether the claimant had knowledge that permission was lacking. The judge held:
The policy's clear and unambiguous language provides that there is no coverage if the insured is occupying a vehicle without the owner's permission. There is no language in the policy that requires knowledge on the insured's part either that the vehicle was stolen or that the owner did not give permission to the insured to occupy it.
. . .
As written the policy clearly provides that PIP coverage will be excluded if the insured is occupying an auto without the owner's permission. In the present case, since the vehicle plaintiff occupied was stolen, there can be no dispute that he did not have the owner's permission to occupy it, and a reasonable jury could not find otherwise.
Although the judge recognized that, in Hall v. Minder, 298 N.J.Super. 243, 689 A.2d 207 (App.Div.), certif. denied, 149 N.J. 408, 694 A.2d 193 (1997), we had found such benefits to be available to innocent passengers pursuant to virtually identical language found in the Unsatisfied Claim and Judgment Fund (UCJF) Act, N.J.S.A. 39:6-70(c)(2), the judge found Hall to be inapplicable because it concerned the Fund, not a private insurer.
Addressing Hardy's UM claim, the judge focused on the policy's coverage agreement, which provided that Liberty Mutual would pay compensatory damages "which an insured is legally entitled to recover from the owner or operator of the uninsured motor vehicle" and upon the policy's exclusion of damages incurred while "using a vehicle without a reasonable belief that the insured is entitled to do so." The judge held that coverage was unavailable under the insuring agreement because Hardy was not legally entitled to recover damages from the owner of the vehicle, and was likewise barred by the policy's exclusionary language.

I.
On appeal from the denial of PIP benefits, Hardy acknowledges that Liberty Mutual's coverage exclusion tracks N.J.S.A. 39:6A-7b(2), which permits an insurer to exclude from benefits a person sustaining injuries who, at the time of the accident, "was occupying or operating an automobile without the permission of the owner." However, he argues that the Legislature did not intend that N.J.S.A. 39:6A-7b(2) apply to bar the claims of "unwitting" occupants of stolen cars. In support of this argument, Hardy notes that the Supreme Court held in Lindstrom v. Hanover Ins. Co., 138 N.J. 242, 649 A.2d 1272 (1994), and we recognized in Stevenson v. State Farm Indem. Co., 311 N.J.Super. 363, 709 A.2d 1359 (App.Div.1998), that "because PIP coverage is considered `a social necessity,'" it should be given "the broadest application consistent with the statutory language." Id. at 371, 709 A.2d 1359 (quoting Lindstrom, supra, 138 N.J. at 247, 649 A.2d 1272).
Concomitantly, Hardy contends that exclusions from coverage must be construed narrowly. See Gambino v. Royal Globe Ins. Cos., 86 N.J. 100, 106-07, 429 A.2d 1039 (1981); Walcott v. Allstate N.J. Ins. Co., 376 N.J.Super. 384, 393, 870 A.2d 691 (App.Div.2005). As an example of the proper approach, Hardy cites our dictum in Martin v. Rutgers Cas. Ins. Co., 346 N.J.Super. 320, 787 A.2d 948 (App.Div. *943 2002), a case in which we affirmed the denial of PIP and UM benefits to an unlicensed driver who "had to know she was not entitled to drive" a borrowed automobile, id. at 325, 787 A.2d 948, invoking a policy exclusion from coverage for persons "[u]sing a vehicle without a reasonable belief that that person is entitled to do so" and a further policy provision establishing a conclusive presumption that a person operating an insured vehicle without a valid license lacks a reasonable belief in such entitlement. Id. at 323, 787 A.2d 948. However, in reaching this conclusion, we noted that the issue presented was one limited solely to recovery by the culpable, injured driver. We observed that we were "not confronted with a claim for PIP coverage put forth by an unwitting, injured passenger," id. at 325, 787 A.2d 948, language that Hardy claims suggests a basis for a favorable result in his case.
Additionally, Hardy relies on our decision in Hall, in which we construed a provision of the Unsatisfied Claim and Judgment Fund Act, N.J.S.A. 39:6-70(c)(2), which requires an applicant for benefits to affirmatively establish in a summary hearing that he was not "operating or riding in a motor vehicle without the permission of the owner," to permit a denial of PIP and UM benefits only when the occupant knew the car's status. 298 N.J.Super. at 247, 689 A.2d 207. There, in reversing determinations of the trial judge, we held:
Obviously, every use without permission does not constitute theft. In the usual situation passengers assume that they are riding in a vehicle with the owner's consent. Although here the vehicle was stolen, in many cases the issue of use without the owner's permission may be indiscernible to the lay person. The Law Division's decisions preclude recovery to that entire class of innocent injured persons. We perceive that the public policy of providing benefits to those innocent persons is as strong as the public policy to provide insurance coverage to all who use a vehicle with the owner's permission.
[Ibid.]
Hardy claims that the PIP statute, like the UCJF statute, is remedial legislation and should similarly be construed to afford coverage in this case.
In contrast, Liberty Mutual argues that both the PIP statute and the policy exclusion based upon it should be read literally to preclude PIP coverage for Hardy's injuries. It asserts that the public policy of providing the broadest possible application of PIP coverage does not preclude the invocation of exclusionary provisions within the insurance contract that are consistent with statutory language. Because the undisputed facts demonstrate that Hardy did not have the car owner's permission to occupy his vehicle, coverage was appropriately denied. We reject Liberty Mutual's position.
The permissible exclusion from PIP benefits that we must construe, set forth in N.J.S.A. 39:6A-7b(2), was adopted in 1983 in connection with the passage of the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984. L. 1983, c. 362, § 10. Although the Introductory Statement to the bill, Assembly No. 3981, provides that "No Fault and Related Clean-Up Provisions" were "mainly designed to tighten statutory eligibility requirements for personal injury protection coverage so as to comport with the original intent of the no-fault law," no specific mention is made of this new exclusion, what motivated its passage, or its intent.[5] *944 Additionally, nothing in the manner in which the 1983 amendments are structured or in their relationship to the already existing exclusions of N.J.S.A. 39:6A-7a, permits an inference as to the Legislature's intent in passing N.J.S.A. 39:6A-7b(2). Although the exclusions of N.J.S.A. 39:6A-7a (covering injuries occurring while committing a high misdemeanor or felony or seeking to avoid lawful apprehension, or while acting with the specific intent of causing injury or damage) both require intent, the exclusion at issue does not appear in that section. It is placed in the succeeding section along with an unrelated exclusion for a person owning a car that was being operated without PIP coverage.
Further, the specific policy and statutory exclusion at issue here has not been construed in factual circumstances like those presented by Hardy that involve injury to a passenger who has alleged he was unaware that the car in which he was riding was stolen. In Martin, we construed language in a Rutgers Casualty Insurance Company policy excluding from PIP and UM coverage persons injured while using a vehicle without a "reasonable belief" of entitlement to be consistent with the exclusion in N.J.S.A. 39:6A-7b(2) for injuries sustained by a person "occupying or operating an automobile without the permission of the owner or other named insured." 346 N.J.Super. at 323-24, 787 A.2d 948. However, in Martin, the policy terms themselves, which included a "reasonable belief" requirement, served to narrow the scope of the statutory exclusion, and our dictum concerning the applicability of the exclusion to an "unwitting, injured passenger," id. at 325, 787 A.2d 948, must be read in the light of the policy language at issue in that case. Neither the PIP provisions of the present policy nor the statute contains the "reasonable belief" language found in Martin.
In Hall, we construed the provisions of N.J.S.A. 39:6-70(c) to require that a UCJF claimant demonstrate that he was not "knowingly" operating or riding in a motor vehicle without the permission of the owner. 298 N.J.Super. at 247, 689 A.2d 207. Because the language of this aspect of the statutorily required proof for a claim against the UCJF is essentially the inverse of the exclusion permitted by N.J.S.A. 39:6A-7b(2), an argument can be made that the latter statute should also be construed to require knowledge on the part of the injured claimant. However, as the motion judge noted, the UCJF is not a provider of private insurance, as is Liberty Mutual. Moreover, because the UCJF operates as an entity of last resort, affording a measure of financial relief for persons who would otherwise be remediless, id. at 246, 689 A.2d 207, an argument could be made for a more expansive construction of its coverage than that available pursuant to a private contract.[6]
Nonetheless, we are persuaded that the exclusion permitted by N.J.S.A. 39:6A-7b(2), and incorporated into the PIP provisions of Liberty Mutual's policy, properly should be construed as requiring knowledge or a reasonable basis for knowledge by the claimant that the vehicle in which he was riding was being operated without the owner's consent, whether as the result *945 of theft, or for other reasons. As the Court noted in Lindstrom, a case in which payment of PIP benefits to a pedestrian injured in a random, drive-by shooting was mandated, despite a dispute as to the proper construction of pedestrian coverage for injuries "caused by an automobile or by an object propelled by or from an automobile,": "Insureds are entitled to coverage in accordance with their objectively-reasonable expectations that are supported by any fair interpretation of the law." 138 N.J. at 247, 649 A.2d 1272 (citing, among others, Werner Indus. v. First State Ins. Co., 112 N.J. 30, 35, 548 A.2d 188 (1988)). The Court continued: "`Objectively reasonable' expectations `may govern even in the absence of ambiguity, in recognition of the generally one-sided nature of insurance contracts.'" Id. at 250, 649 A.2d 1272 (quoting Clegg v. N.J. Auto. Full Underwriting Assoc. ex rel. Cigna Ins. Co., 254 N.J.Super. 634, 639, 604 A.2d 179 (App.Div.1992)).
In our view, an exclusion from coverage of persons who did not know or have reason to know that they were riding a car that was being operated without the permission of the car's owner would be unrealistic and not objectively reasonable for the reasons, stated in Hall, that we previously quoted. In many circumstances, a person may reasonably assume that a car in which he or she is riding is being operated with the consent of the owner. A passenger cannot be expected to inquire, upon entry into a vehicle, as to the status of the car and driver, unless existing facts place the passenger on notice that the use of the car is questionable. An interpretation of N.J.S.A. 39:6A-7b(2) and the policy language here that would exclude such an unknowing person from coverage, if injured, would unjustifiably narrow the coverage reasonably expected by an insured.[7] *946
Moreover, we find the public policy considerations supporting an expansive interpretation of the PIP statute to be substantially similar to those supporting PIP recovery pursuant to the UCJF law, and thus no reasoned basis to distinguish our decision in Hall from our resolution of this matter. New Jersey's current Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35 requires that the Act, in general, "be liberally construed so as to effect the purposes thereof." N.J.S.A. 39:6A-16. As the Court's opinion in Lindstrom reflects, this principle has been specifically employed in a PIP context as the result of the recognition of PIP as a "social necessity." Lindstrom, supra, 138 N.J. at 247, 649 A.2d 1272; see also Darel v. Pa. Mfrs. Ass'n Ins. Co., 114 N.J. 416, 425, 555 A.2d 570 (1989); Amiano v. Ohio Cas. Ins. Co., 85 N.J. 85, 90, 424 A.2d 1179 (1981). The construction that Liberty Mutual espouses for its policy exclusion would unnecessarily undermine that principle.
Because Hardy's knowledge of the status of the vehicle in which he was riding at the time of the accident raises contested issues of material fact, we reverse summary judgment on his PIP claim and remand the matter for trial of that issue.

II.
Hardy additionally seeks reversal of summary judgment in Liberty Mutual's favor on his claim for UM coverage. We agree with Hardy's position that, because the car in which he was riding was stolen, coverage under otherwise applicable liability insurance could be disclaimed as the result of the non-permissive use of the vehicle, rendering the vehicle uninsured for purposes of the application of the UM statute, N.J.S.A. 17:28-1.1e(2)(a) and (b).[8]Rutgers Cas. Ins. Co. v. Collins, 158 N.J. 542, 549, 730 A.2d 833 (1999); Longo v. Mkt. Transition Facility, 326 N.J.Super. 316, 321, 741 A.2d 149 (App.Div.1999). Additionally, we agree with Hardy's argument that both the UM statute, N.J.S.A. 17:28-1.1a, and Liberty Mutual's policy extend UM coverage to liability incurred as the result of the tortious conduct of an "operator." Abdul-Matin was such an operator. Therefore, absent an applicable exclusion, benefits were payable to Hardy pursuant to the insuring agreement contained in Liberty Mutual's UM coverage.
However, the policy, like that in Martin, contains an exclusion from coverage for bodily injury sustained by an insured "[u]sing a vehicle without a reasonable belief that the `insured' is entitled to do so." Although "using" is not defined, we regard the term as sufficiently broad to encompass Hardy's act of riding in the car. Indeed, we have previously construed the term in a far more expansive manner than is required in the present case. See, e.g., Svenson v. Natn'l Consumer Ins. Co., 322 N.J.Super. 410, 412-16, 731 A.2d 91 (App. Div.1999) (holding that a tow truck passenger's injuries arose out of the use of his car when that car was being carried on the flat bed truck). Further, we are aware of nothing that would suggest that the exclusion was invalidly included in the policy at issue. In that connection, N.J.S.A. 17:28-1.1d provides that: "Uninsured and underinsured motorist coverage shall be subject to the policy terms, conditions and exclusions approved by the Commissioner of *947 Banking and Insurance." There is no suggestion here that such approval did not occur. Because the exclusion requires a finding as to Hardy's "reasonable belief" that he was entitled to occupy the car, and because such a finding requires resolution of contested factual issues, we reverse summary judgment in Liberty Mutual's favor on this issue, as well, remanding the matter to the trial court.
Reversed and remanded for further proceedings in light of this opinion.
NOTES
[1] Defendant is designated in the complaint as "Humza Abdul." However, that name appears to be incorrect.
[2] Liberty Mutual claims on appeal that an affidavit signed by Hardy's girlfriend contradicts his statements denying personal knowledge of Abdul-Matin. That affidavit is not a part of the record on appeal.
[3] The record on appeal does not contain Liberty Mutual's denial letter, and its basis is thus unclear.
[4] Neither the Unsatisfied Claim and Judgment Fund nor its administrator, the New Jersey Property-Liability Insurance Guaranty Association, was made a party to the suit, and the record does not reflect whether a claim for PIP benefits or compensatory damages was submitted to it. However, it does not appear that Hardy is a "qualified person" entitled to recover under the Unsatisfied Claim and Judgment Fund Act. See N.J.S.A. 39:6-62, which excludes a person who "is an insured under a policy provision providing coverage for damages sustained by the insured as a result of the operation of an uninsured motor vehicle in a form authorized to be included in automobile liability policies of insurance delivered or issued for delivery in this State."
[5] Decisions discussing this amendment do not address this particular provision. See Caviglia v. Royal Tours of Am., 178 N.J. 460, 468-69, 842 A.2d 125 (2004); Walcott, supra, 376 N.J.Super. at 388-89, 870 A.2d 691; Parkway Ins. Co. v. N.J. Neck & Back, 330 N.J.Super. 172, 180, 748 A.2d 1221 (Law Div.1998).
[6] However, we have held in the context of UM coverage that the purpose of such coverage is to ease the financial burden on the UCJF. Rider v. First Trenton Cos., 354 N.J.Super. 491, 497, 808 A.2d 143 (App.Div.2002) (citing Fernandez v. Selected Risks Ins. Co., 82 N.J. 236, 240, 412 A.2d 755 (1980)).
[7] New Jersey stands virtually alone in that statutes from other states that authorize a similar policy exclusion typically either have an explicit knowledge requirement, allow a good faith excuse, or exempt those who have either an express or implied authorization to use the vehicle. Colo.Rev.Stat. Ann. § 10-4-623(2)(b) ("The coverage described in section 10-4-620 may also be subject to exclusions where the injured person . . . [i]s operating a motor vehicle as a converter without a good faith belief that he or she is legally entitled to operate or use such vehicle"); Kan. Stat. Ann. § 40-3108(b) ("Any insurer may exclude benefits . . . to any person suffering injury, if such person . . . was an intentional converter of a motor vehicle at the time the injury was sustained"); Ky.Rev.Stat. Ann. § 304.39-190 ("a person is not a converter if he uses the motor vehicle in the good faith belief that he is legally entitled to do so"); Md. Ins.Code Ann. § 19-505(c)(1)(i)(3) ("An insurer may exclude from the coverage described in this section benefits for . . . an individual, otherwise insured under the policy, who . . . is injured in a motor vehicle accident while operating or voluntarily riding in a motor vehicle that the individual knows is stolen"); Mich. Comp. Laws § 500.3113(a) ("A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident . . . [t]he person was using a motor vehicle . . . which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle"); Minn.Stat. Ann. § 65B.58 ("For the purpose of this section, a person is not a converter if that person uses the motor vehicle in the good faith belief that the person is legally entitled to do so."); N.Y. Ins. Law § 5103(b)(3)(iii) ("An insurer may exclude from coverage . . . a person who . . . [i]s injured while he is . . . operating or occupying a motor vehicle known to him to be stolen"); N.D. Cent.Code, § 26.1-41-07(1) ("Basic or optional excess no-fault benefits are not payable to or on behalf of any person who is injured while . . . [o]ccupying any motor vehicle without the expressed or implied consent of the owner"); 75 Pa. Cons.Stat. § 1718(b) ("A person who knowingly converts a motor vehicle is ineligible to receive first party benefits from any source other than a policy of insurance under which he is an insured for any injury arising out of the maintenance or use of the converted vehicle"); Utah Code Ann. § 31A-22-309(2)(a)(ii) ("Any insurer issuing personal injury protection coverage under this part may only exclude from this coverage benefits . . . for any injury sustained by any person while operating the insured motor vehicle without the express or implied consent of the insured").
[8] We have not been informed whether such coverage was in fact disclaimed.