965 A.2d 1165

TYRELL HARDY, BY AND THROUGH HIS GUARDIAN AD LITEM VERA DOWDELL, PLAINTIFF–RESPONDENT, v. HUMZA ABDUL–MATIN, MERRICK L. HARRIS, PUBLIC SERVICE ELECTRIC AND GAS AND JOSEPH M. KULAK, DEFENDANTS, AND LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANT–APPELLANT.

Argued November 5, 2008—Decided March 5, 2009.

*Dana C. Argeris* argued the cause for appellant (*Marshall, Dennehey, Warner, Coleman & Goggin,* attorneys; *Walter F. Kawalec, III,* on the briefs).

*Randi S. Greenberg* argued the cause for respondent (*John P. McGovern,* attorney).

Justice WALLACE, JR. delivered the opinion of the Court.

This is an insurance coverage case. The question presented is whether a passenger who did not know the vehicle he was in was stolen is entitled to Personal Injury Protection (PIP) benefits under an insurance policy with an exclusion that tracks the language of *N.J.S.A.* 39:6A–7(b)(2), which authorizes insurers to deny benefits to someone who "was occupying or operating an automobile without the permission of the owner or other named insured." Plaintiff, a juvenile, was injured while riding in a stolen vehicle. He asserted that he did not know the vehicle was stolen, and sought PIP benefits from his guardian's insurance company. We hold that the unambiguous language in both the statute and the policy make it clear that the plaintiff may not receive PIP

benefits because he did not have the permission of the owner to occupy the vehicle in which he was injured.

## I.

The material facts are undisputed. On the afternoon of October 20, 2004, sixteen-year-old Humza Abdul–Matin and twenty-four-year-old Alquan Edwards arrived in a silver Subaru at fourteen-year-old Tyrell Hardy's home in East Orange. Hardy knew Edwards because Edwards had dated his sister, but he only vaguely knew Matin. The three young men decided to drive to a nearby luncheonette. Hardy entered the vehicle and left with Edwards and Matin; unknown to Hardy, the owner of the Subaru had reported the car stolen earlier that day. While in the car, Hardy did not notice any physical damage to the doors, windows, ignition or locks of the car that might have alerted him that the car was stolen.

Matin drove, Edwards sat in the front passenger seat, and Hardy sat in the back seat. At approximately 4:30 p.m., the Subaru collided with a Public Service Electric and Gas truck and burst into flames. Several bystanders helped to remove Hardy and Edwards from the car. Hardy suffered a broken leg and other injuries, for which he remained hospitalized for approximately one month before being released. Edwards also was hospitalized, and later died from his injuries. Matin left the scene of the accident but subsequently was taken to a hospital and treated for his leg and head wounds. Following an investigation, Matin was arrested. He eventually pled guilty to second-degree aggravated assault, third-degree aggravated assault, and third-degree receipt of stolen property.

At the time of the accident, Hardy lived with his grandmother, who had auto insurance coverage with Liberty Mutual Insurance Company (Liberty). She sought PIP benefits for Hardy's injuries, but Liberty rejected the claim because Hardy sustained his injuries while riding in a stolen vehicle without the owner's consent.

On May 2, 2006, Hardy's grandmother, as his guardian, filed a suit on his behalf against Liberty and others. The claim against Liberty sought a declaration that Hardy (hereinafter plaintiff) was entitled to PIP and uninsured motorist (UM) benefits for the injuries he suffered in the accident.

Liberty filed a motion for summary judgment, asserting that plaintiff was not entitled to PIP and UM benefits because he was not authorized to ride in the vehicle at the time of the accident. Plaintiff opposed the motion. The trial court concluded that a plain reading of the policy exclusion barred coverage for any insured who lacked permission from the vehicle's owner to occupy the vehicle at the time of the accident. Because plaintiff did not have permission to occupy the stolen vehicle, the trial court granted Liberty's motion for summary judgment.

Plaintiff appealed. In a published opinion, the Appellate Division reversed. *Hardy ex rel. Dowdell v. Abdul–Matin*, 397 *N.J.Super.* 574, 938 *A.*2d 938 (2008). The panel noted that although the language of the exclusion in the policy and in *N.J.S.A.* 39:6A–7 could be read otherwise, it would be appropriate to read into the statute and the insurance policy an additional scienter requirement. *Id.* at 583–84, 938 *A.*2d 938. The panel then concluded that the issue of whether plaintiff was entitled to PIP benefits turned on whether he knew he did not have permission from the owner to occupy the vehicle. *Id.* at 586, 938 *A.*2d 938. In reaching that outcome, the panel relied primarily on *Hall v. Minder*, 298 *N.J.Super.* 243, 689 *A.*2d 207 (App.Div.), *certif. denied*, 149 *N.J.* 408, 694 *A.*2d 193 (1997), a case involving a claim against the Unsatisfied Claim and Judgment Fund (Fund). *Id.* at 583–84, 694 *A.*2d 193. The panel saw no rational basis to interpret *N.J.S.A.* 39:6A–7(b)(2) differently from *N.J.S.A.* 39:6–70(c)(2), since both statutes were remedial in nature and contained virtually identical language. *Id.* at 584, 694 *A.*2d 193. The panel also reversed the trial court's denial of UM benefits. *Id.* at 586–87, 694 *A.*2d 193. Liberty filed a petition for certification, but did not challenge the Appellate Division's decision with regard to the UM

claim.  We granted Liberty's petition.  195 *N.J.* 418, 949 *A.*2d 847 (2008).

## II.

Liberty argues that a plain reading of *N.J.S.A.* 39:6A–7 and the terms of the policy reveals that neither contains a requirement that the knowledge of the insured must be considered when determining if coverage exists.  Liberty notes that if the Legislature intended the denial of PIP benefits to require the insured to know that he did not have the owner's permission to occupy the vehicle, then the Legislature would have included such a scienter requirement in the statute.  Liberty urges that the reasoning of *Hall, supra*, should be limited to claims against the Fund because the purpose of the Fund was to cover the widest possible number of innocent accident victims, whereas a private insurance company, like Liberty, does not have the same objective.  Liberty argues that the Legislature sought to keep private insurance rates down, and included a blanket exclusion for PIP claims when the vehicle owner's permission was not obtained in an attempt to achieve that goal.  In further support of its position, Liberty contends that, unlike the UM section of the policy that expressly states that UM coverage is not available to any insured who lacked a "reasonable belief that the insured is entitled" to use the vehicle in which he was injured, the PIP provision makes no reference to a "reasonable belief" standard.

In contrast, plaintiff argues that the Appellate Division properly added a scienter requirement because a literal reading of *N.J.S.A.* 39:6A–7(b)(2) is inconsistent with legislative intent and would lead to an absurd result.  Plaintiff contends that while the Legislature intended the 1984 amendments to the No–Fault Act to tighten eligibility requirements for PIP coverage, there is nothing in the legislative history to support the literal and unjust interpretation of *N.J.S.A.* 39:6A–7(b)(2) urged by Liberty.  Plaintiff adds that just as the Appellate Division interpreted the statute to require a scienter requirement on a PIP claimant's part, that same require-

ment exists in the insurance policy because the policy is based entirely on the language of the statute and should be interpreted in the same manner.

## III.

### A.

Initially, we restate some general principles that apply to the interpretation of a statute. The primary objective of the court is to ascertain the intent of the Legislature; we have emphasized that the best indicators of that intent are the plain words of the statute. *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). In reviewing the statutory language, courts should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." *Ibid.* (citation omitted). We have cautioned against " 'rewrit[ing] a plainly-written enactment of the Legislature or presum[ing] that the Legislature intended something other than that expressed by way of the plain language.' " *Ibid.* (quoting *O'Connell v. State,* 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002)).

However, if there is ambiguity in the statutory language, the court may "utiliz[e] extrinsic evidence" for assistance in determining the correct interpretation. *Lozano v. Frank DeLuca Constr.,* 178 *N.J.* 513, 522, 842 *A.*2d 156 (2004). Moreover, extrinsic evidence may be considered when "a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language." *DiProspero, supra,* 183 *N.J.* at 493, 874 *A.*2d 1039.

Those same principles generally apply to the interpretation of an insurance policy. The court must start with the plain language of the policy and "give the words 'their plain, ordinary meaning.' " *President v. Jenkins,* 180 *N.J.* 550, 562, 853 *A.*2d 247 (2004) (quoting *Zacarias v. Allstate Ins. Co.,* 168 *N.J.* 590, 595, 775 *A.*2d 1262 (2001)). "If the policy terms are clear, courts should

interpret the policy as written and avoid writing a better insurance policy than the one purchased." *Ibid.* Even exclusionary provisions "are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" *Princeton Ins. Co. v. Chunmuang,* 151 *N.J.* 80, 95, 698 *A.*2d 9 (1997) (quoting *Doto v. Russo,* 140 *N.J.* 544, 559, 659 *A.*2d 1371 (1995)). If the policy terms are not clear or are ambiguous, courts should "interpret the contract to comport with the reasonable expectations of the insured." *Zacarias v. Allstate Ins. Co.,* 168 *N.J.* 590, 595, 775 *A.*2d 1262 (2001).

■   The insurance policy is an agreement that "set[s] forth, in fundamental terms, the general outlines of coverage." *Weedo v. Stone–E–Brick, Inc.,* 81 *N.J.* 233, 237, 405 *A.*2d 788 (1979). The language in the policy "underscores the basic notion that the premium paid by the insured does not buy coverage for all ... damage but only for that type of damage provided for in the policy." *Ibid.* Thus, limitations on coverage in an insurance policy are designed "to restrict and shape the coverage otherwise afforded." *Ibid.*

■   When the terms of the insurance flow from a statute, "[t]he statute determines the legal operation of the contract." *Saffore v. Atl. Cas. Ins. Co.,* 21 *N.J.* 300, 310, 121 *A.*2d 543 (1956). That is, when the plain language of a policy provision is based on statutory authority, the policy must be interpreted and construed in a manner consistent with the statute. *Ibid.*

### B.

■   *N.J.S.A.* 39:6A–7(b)(2) authorizes an insurer to "exclude from the [PIP] benefits ... any person having incurred injuries or death, who, at the time of the accident ... (2) was occupying or operating an automobile without the permission of the owner or other named insured." Consistent with that statutory limitation, the Liberty insurance policy contains an "EXCLUSIONS" section that provides in part that

A. We do not provide Personal Injury Protection Coverage for "bodily injury":

1. To any "insured":

. . .

b. Operating or "occupying" an "auto" *without the permission of the:*

(1) *Owner of the "auto";* or

(2) Named insured under the policy insuring that "auto".

[Emphasis added.]

## C.

We turn now to interpret *N.J.S.A.* 39:6A–7(b)(2) and the PIP exclusion in the insurance policy. The statute clearly and unambiguously directs that an insurer may deny the extension of PIP benefits to any person who, at the time of the accident, "was occupying or operating an automobile *without the permission of the owner or other named insured."* *N.J.S.A.* 39:6A–7(b)(2) (emphasis added). Consistent with that statutory provision, Liberty provides in its policy that it will not pay PIP benefits to any insured "operating or 'occupying' an 'auto' without the permission of the [o]wner of the 'auto.' " The clear, unambiguous language of the policy exclusion requires that before an insured may recover PIP benefits, the insured must have occupied the covered auto with the permission of the owner or named insured.

Additionally, the policy language for UM coverage further supports our conclusion that we should not impose a scienter requirement in determining whether an injured person may recover PIP benefits. The policy provides that UM coverage is excluded when the insured has a "reasonable belief" that the insured's presence in the vehicle was not with the owner's permission. Unlike the UM language in the policy, the PIP exclusion does not contain any reference to the insured's "reasonable belief or knowledge." A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner. *Di-Prospero, supra,* 183 *N.J.* at 496–97, 874 *A.*2d 1039. If we were to read the PIP exclusion to provide a reasonable belief or knowledge requirement on the part of the injured person seeking PIP benefits, we would render those terms meaningless in the UM

portion of the policy. *Ibid.* We will not do that. Here, when Liberty intended a reasonable belief or knowledge requirement, it expressly provided for one, as it did in the UM exclusion. The lack of similar language in the PIP exclusion is ample evidence that a reasonable belief or knowledge is not part of the PIP requirements.

We find further support that the Legislature did not include a scienter requirement in section 7(b) by looking to the section immediately preceding it. *N.J.S.A.* 39:6A-7. Section 7(a) sets forth two ways in which a person can be excluded from benefits, and both involve *knowing* wrongdoing by the insured. *See id.* 39:6A-7(a) ("(1) while committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer; or (2) while acting with specific intent of causing injury or damage to himself or others"). No such requirement appears in section 7(b).

The Appellate Division recognized that a plain reading of the statute would deny PIP coverage for plaintiff, but, based largely on the holding in *Hall, supra,* 298 *N.J.Super.* at 243, 689 *A.*2d 207, it read a knowledge requirement into the statute and remanded to determine whether plaintiff was entitled benefits. *Hardy, supra,* 397 *N.J.Super.* at 583–84, 938 *A.*2d 938. We disagree. In *Hall,* the plaintiff sustained serious injuries in an accident while riding in a car driven by the defendant that she claimed she did not know was stolen. *Ibid.* Later, the plaintiff applied to the Fund for PIP benefits to pay for her medical expenses. 298 *N.J.Super.* at 245, 689 *A.*2d 207. The Fund rejected the plaintiff's claim on the grounds that she was riding in a stolen vehicle without the owner's permission to occupy the vehicle. *Ibid.* After the trial court denied benefits, the Appellate Division addressed the meaning of the exclusion in *N.J.S.A.* 39:6-70(c), which provides that the applicant shall be required to show that he or she was not "operating or riding in a motor vehicle without the permission of the owner." *Ibid.* The panel reasoned that because the Fund was established to cover the widest possible number of "innocent

accident victims," *id.* at 247, 689 *A.*2d 207, and is to be " 'liberally construed to advance the remedy with due regard to the fulfillment of the essential legislative design while protecting the Fund against fraud and abuse,' " the Legislature did not intend to exclude those who were not knowingly occupying a car without the owner's consent. *Id.* at 248, 689 *A.*2d 207 (quoting *Corrigan v. Gassert,* 27 *N.J.* 227, 237, 142 *A.*2d 209 (1958)). The panel ordered the Fund to pay benefits to the plaintiff if, on remand, it was determined that plaintiff did not have knowledge the car was stolen. *Id.* at 249, 689 *A.*2d 207.

Assuming, without deciding, that *Hall* is correct, we limit its rationale to claims against the Fund. We have long declared that the purpose of the 1983 amendments, which constitute the Insurance Freedom of Choice and Cost Containment Act of 1984, *L.* 1983, c. 362, was the reduction in private insurance costs, not the expansion of coverage. *See State Farm Mut. Auto. Ins. Co. v. Licensed Beverage Ins. Exch.,* 146 *N.J.* 1, 14, 679 *A.*2d 620 (1996) ("As expressed by then-Governor Kean, the purpose of the 1984 Act was to 'bring about long sought after reductions in premiums for New Jersey motorists.' " (quoting *Statement of Governor Thomas H. Kean* accompanying *L.* 1983, c. 362)). In our view, to impose a scienter requirement in a private insurance policy where the express terms of the policy do not impose such a requirement would be inconsistent with the intent of the Legislature to reduce insurance premiums. Rather, consistent with the Legislative intent to reduce costs, we hold that the Legislature intended to authorize insurance companies to exclude PIP claims when the injured person did not have the permission of the owner to occupy the vehicle.

It is obvious that plaintiff did not have the owner's permission to ride in the auto at the time of the accident because the vehicle was stolen. Consequently, we hold that the exclusion for PIP benefits in Liberty's policy, which is consistent with the authority in the statute that PIP benefits need not be afforded to a person

who did not have the owner's permission to ride in the vehicle, operates to deny plaintiff's claim for PIP benefits.

## IV.

We reverse in part the judgment of the Appellate Division and remand for entry of judgment in favor of Liberty on the PIP claim.

Justice LONG, dissenting.

I would affirm the judgment of the Appellate Division substantially for the reasons expressed in the thorough and thoughtful opinion of Judge Payne. In my view, in enacting *N.J.S.A.* 39:6A–7(b)(2), the Legislature did not intend that a college student, picked up by a classmate for school and severely injured in a motor vehicle accident, should be denied coverage under his mother's insurance policy if it later turns out that the friend lacked permission from the owner of the vehicle, a state of affairs of which the victim was entirely unaware. Because that is the effect of the majority opinion, I cannot subscribe to it.

Like the court in *Hall v. Minder*, 298 *N.J.Super.* 243, 246–48, 689 *A.*2d 207 (App.Div.1997), which interpreted *N.J.S.A.* 39:6–70(c), an analogous provision of the Unsatisfied Claim and Judgment Fund Law, I conclude that although the PIP statute does not explicitly require knowledge of lack of permission, "a literal interpretation 'would be inconsistent with the overall purpose' " of the Act, 298 *N.J.Super.* at 249, 689 *A.*2d 207 (quoting *Young v. Schering Corp.*, 141 *N.J.* 16, 25, 660 *A.*2d 1153 (1995)), which we have held to be " 'a social necessity,' " *Lindstrom v. Hanover Ins. Co.*, 138 *N.J.* 242, 247, 649 *A.*2d 1272 (1994) (quoting *Darel v. Pa. Mfrs. Ass'n Ins. Co.*, 114 *N.J.* 416, 425, 555 *A.*2d 570 (1989)), *overruled in part on other grounds by Shaw v. City of Jersey City*, 174 *N.J.* 567, 574, 811 *A.*2d 404 (2002). In the face of such social necessity, the scope of coverage of a PIP policy should be approached liberally, *N.J.S.A.* 39:6A–16, and exclusions from coverage, narrowly interpreted. *See Walcott v. Allstate N.J. Ins. Co.*,

376 *N.J.Super.* 384, 393, 870 *A*.2d 691 (App.Div.2005) (citing *Gambino v. Royal Globe Ins. Cos.*, 86 *N.J.* 100, 106–07, 429 *A*.2d 1039 (1981)).

So viewed, the PIP statute does not require the exclusion from coverage of every single citizen who accepts a ride from a friend or relative who later is shown to lack permission from the owner. To be sure, there are circumstances under which a person should know that the use of the car is questionable. Such persons clearly fall within the exclusion. To the contrary, the innocent passenger is entitled to coverage. In concluding otherwise, the majority sweeps too broadly and thus, I respectfully dissent.

Justice ALBIN joins in this opinion.

*For reversal in part/remandment*—Chief Justice RABNER and Justices LaVECCHIA, WALLACE, RIVERA–SOTO and HOENS—5.

*For affirmance*—Justices LONG and ALBIN—2.