**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3336-23

BARTLEY HEALTHCARE, INC.,

    Plaintiff-Appellant,

v.

ROBERT OTT,

    Defendant,

and

LAURA CURCIONE,

    Defendant-Respondent.

_____

Submitted June 3, 2025 – Decided August 15, 2025

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1995-22.

Dorf Nelson & Zauderer, LLP, attorneys for appellant (Vicki A. Shea, on the brief).

Taff, Davies & Kalwinsky, LLC, attorneys for respondent (Joel A. Davies, on the brief).

PER CURIAM

Plaintiff Bartley Healthcare, Inc. appeals from two May 22, 2024 trial court orders. The first order granted summary judgment to defendant Laura Curcione[1] and the second order denied plaintiff's motion for summary judgment. We are constrained to reverse and vacate the orders because the court did not render sufficient findings of fact and conclusions of law pursuant to Rule 1:7-4(a). We remand to the trial court for further proceedings consistent with this opinion.

## I.

The salient facts are substantially undisputed. Plaintiff operates a residential nursing home facility. Codefendant Robert Ott is the father of defendant and was a resident of plaintiff's facility on two occasions, once beginning in December 2018 and again in January of 2020. In connection with the admission of Ott in 2018 and his readmission in 2020, defendant signed two "Letter[s] of Responsibility Awaiting Medicaid Eligibility" (letters) on

---

[1] We reference Laura Curcione as defendant as Robert Ott was dismissed from the trial court proceeding for lack of prosecution. R. 1:13-7.

A-3336-23

November 5, 2019 and January 14, 2020. Defendant's signature on both letters was followed by a handwritten entry of "POA."[2]

In the letters, defendant agreed to the following.

> I, Laura Curcione as the Responsible Party for Robert Ott ACKNOWLEDGE AND AGREE that I am responsible for managing the funds and resources of Robert Ott and that I will do so recognizing the obligation to pay for the services rendered by [plaintiff] and guarantee the payment from the funds of Robert Ott or from reimbursement of the funds that were or should have been to be available for any and all fees and charges incurred during his stay at [plaintiff's nursing home facility] until the Medicaid application is approved by [OCBSS].

In addition, defendant acknowledged submission of an application for Medicaid and agreed to "diligently pursue the application approval including responding timely and completely to all requests for information by the approving agency." Defendant further agreed to keep plaintiff apprised of the progress of the application.

Plaintiff also alleged defendant signed a separate agreement on February 24, 2020 (agreement). The agreement, in pertinent part stated: "In accordance with our discussion[,] you acknowledge the outstanding balance of $48,179.81 on Robert Ott's account. You have agreed that these charges are due and that

---

[2] This acronym is commonly used in the legal field to connotate "Power of Attorney."

you will pay the entire balance to [plaintiff] within 90 days of this letter [sic] May 31st, 2020."

After a demand for payment was made and no payments were received, plaintiff filed a complaint against defendants for the outstanding care costs owed by Ott. Defendant filed an answer denying responsibility for the debt and also stated there was no executor or administrator for Ott's estate. Plaintiff's complaint asserted a review of the Medicaid file from the Ocean County Board of Social Services (OCBSS) revealed that defendant had failed to diligently process the Medicaid application on behalf of Ott. Specifically, plaintiff asserted Ott was denied Medicaid on November 15, 2019 based upon defendant's failure to provide documentation requested by the OCBSS and defendant's failure to verify all financial resources of Ott. Plaintiff agreed Ott was eventually approved for Medicaid in 2020, however, the approval was subject to a penalty. Plaintiff claims the penalty arose from non-qualified transfers of funds in the amount of $9,762.45 and, because of this penalty, Medicaid refused to cover services rendered to Ott from February 1, 2020 through February 22, 2020. Plaintiff asserted that defendant never appealed the penalty assessment. Plaintiff's complaint claimed $19,669.74 remained due and owing from defendants.

A-3336-23

After discovery concluded, plaintiff moved for summary judgment and defendant cross-moved for summary judgment. The trial judge held oral argument on the cross-motions, denied defendant's motion, granted plaintiff's motion, and dismissed plaintiff's complaint with prejudice.

The trial court's written decision stated:

> [Defendant] signed documents on her father's behalf under a [POA] during his admission to [p]laintiff nursing home. Robert Ott died on January 17, 2022. The [POA] to [defendant] extinguished on his death. [Plaintiff] filed this complaint on September 9, 2022. Robert Ott left surviving five adult children. There is no representative of Robert Ott's Estate.

The court further determined that "under the circumstances here and, pursuant to N.J.S.A. 30:13-3.1(a)(2), [defendant] is not responsible as a guarantor or individually for her father's debt to [plaintiff]." Thereafter, the court entered corresponding orders.

On appeal, plaintiff asserts the court erred by granting defendant's summary judgment motion and denying its motion. Plaintiff contends the court misapplied N.J.S.A. 30:13-3.1 because the written agreements with defendant were not guarantees and its action against plaintiff was based on defendant's direct breach of the letters where she had agreed to pay for Ott's care out of his funds and to diligently pursue Ott's application for Medicaid. Plaintiff asserts that because evidence in the record shows that defendant failed to diligently

pursue Medicaid benefits pursuant to the letters' requirements, Medicaid denied to pay for Ott's care costs. Plaintiff further asserts but for defendant's breach of the agreement, Medicaid would have paid for all or a portion of Ott's outstanding care costs claimed in its complaint. Plaintiff further contends no genuine issues of material fact exist; plaintiff and defendant entered into a contract through the terms in the letters and agreement; and defendant breached those terms causing damages consisting of the unpaid care costs. Plaintiff requests reversal of the court orders denying summary judgment and granting defendant summary judgment.

II.

We review the grant or denial of summary judgment de novo, applying the same legal standards as the trial court. Green v. Monmouth University, 237 N.J. 516, 529 (2019). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (quoting R. 4:46-2(c)). A genuine issue of material fact exists when "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder

6

to resolve the alleged disputed issue in favor of the non-moving party." Id. at 540.

Rule 1:7-4 requires trial courts to place findings of fact and conclusions of law on the record. This rule states in pertinent part:

> Required Findings. The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right, and also as required by R. 3:29. The court shall thereupon enter or direct the entry of the appropriate judgment.
>
> [R. 1:7-4(a).]

Our capacity to resolve appeals is a direct function of the trial court's adherence to its obligation to clearly state findings of fact and conclusions of law pursuant to Rule 1:7-4(a). The rule requires a trial court to "'state clearly [its] factual findings and correlate them with the relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose] conclusion[s].'" Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)). Without a sufficient statement of reasons, "we are left to conjecture as to what the judge may have had in mind." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990).

Initially, we note the trial court prepared an identical written statement of reasons for both orders. Although both statements of reasons cite to N.J.S.A. 30:13-3.1(a)(2) and find defendant is not responsible as a guarantor or individually for her father's debt to plaintiff under the cited statute, it failed to render specific factual findings under the standard set forth in Rule 4:46-2 and correlate those findings to its legal conclusions based on the cited statute. Specifically, we are unable to discern the factual basis for the court's finding that "under the circumstances here and, pursuant to N.J.S.A. 30:13-3.1(a)(2), defendant is not responsible as a guarantor or individually for [Ott's] debt to plaintiff" and the specific uncontroverted facts in the summary judgment record to support such conclusion. We further note the court did not enter specific findings concerning the letters and agreement which plaintiff asserted were contractual obligations breached by defendant nor the reasons these contracts were unenforceable pursuant to the cited statute. As such, we conclude the trial court's decision did not sufficiently comport with Rules 1:7-4 and 4:46-2 and we are therefore constrained to remand for the court to enter specific factual findings and its corresponding legal conclusions.

Further, based on our review of the record and merits briefs of the parties, we add the following comments. A party violates the terms of a contract by

failing to fulfill a requirement enumerated in the agreement. To prevail on a claim for breach of contract, a plaintiff must prove four elements:

> First, that the "parties entered into a contract containing certain terms;" second, "plaintiff[s] did what the contract required [it] to do"; third, that "defendant[s] did not do what the contract required it to do[,]" defined as a "breach of contract;" and fourth, that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff."
>
> [Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016), citing Model Jury Charge (Civil) §4.10A.]

"[T]he Nursing Home Act (NHA), N.J.S.A. 30:13-1 to -17 serves to complement the federal Nursing Home Reform Act, 42 U.S.C.A. § 1396(r), Congress's statutory scheme intended to protect nursing home residents and their families." Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 116 (2014). Under federal law, "a nursing facility must . . . not require a third party guarantee of payment to the facility as a condition of admission (or expedited admission) to, or continued stay in, the facility . . . ." 42 U.S.C. § 1396r(c)(5)(A)(ii). The federal statute, however, does not "prevent[] a facility from requiring an individual, who has legal access to a resident's income or resources available to pay for care in the facility, to sign a contract (without incurring personal financial liability) to provide payment from the resident's income or resources for such care." Id. § 1396r(c)(5)(B)(ii). As explained by the Court in

A-3336-23

Manahawkin Convalescent, "federal law has long barred nursing homes accepting either Medicaid or Medicare from compelling third party guarantees of resident payment, but permits such facilities to require individuals with legal access to the resident's assets to pay for the resident's care with such assets." 217 N.J. at 116.

In 1997, our State "Legislature amended the NHA to add language similar to" the federal statutory provisions. Id. at 117; see also L. 1997, c. 241, § 3. The amendment, which is codified in N.J.S.A. 30:13-3.1(a)(2), provides in pertinent part:

> A nursing home shall not, with respect to an applicant for admission or a resident of the facility:
>
> . . . .
>
> (2) require a third[-]party guarantee of payment to the facility as a condition of admission or expedited admission to, or continued residence in, that facility; except that when an individual has legal access to a resident's income or resources available to pay for facility care pursuant to a durable power of attorney, order of guardianship or other valid document, the facility may require the individual to sign a contract to provide payment to the facility from the resident's income or resources without incurring personal financial liability.
>
> [N.J.S.A. 30:13-3.1(a)(2).]

A court must first consider the statute's plain language because that is the "best indicator of [legislative] intent," DiProspero v. Penn, 183 N.J. 477, 492 (2005), and we must "ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 101 (2009) (citing DiProspero, 183 N.J. at 492); see also Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012).

Applying these principles, we determine N.J.S.A. 30:13-3.1(a)(2) provides only that a nursing home may not require a third-party guarantee of payment as a condition of a nursing home resident's admission or continued residence. A nursing home, however, may require that an individual who has control over a resident's income and assets agree to pay for the resident's care from that income and those assets without incurring any personal financial liability. The statute does not prohibit a nursing home from requiring that an individual enter into an agreement other than a guarantee of payment, and the statute does not immunize individuals from personal liability based on contractual obligations undertaken that are not proscribed by N.J.S.A. 30:13-3.1(a)(2), or that are founded on other wrongful conduct.

Our comments should not be considered as factual determinations and we leave those findings and any correlating legal conclusions to the discretion of

11

the trial court on remand.  We vacate the orders on appeal and remand for further proceedings consistent with this opinion.  We leave to the trial court's discretion whether to permit further briefings or hold supplemental arguments in light of this opinion.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

A-3336-23