146 N.J. Super. 30 (1977)
368 A.2d 956
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID B. SCHUMM, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1976.
Decided January 3, 1977.
*31 Before Judges LYNCH, MILMED and ANTELL.
Mr. Martin G. Gilbert argued the cause for appellant (Messrs. Wharton, Stewart & Davis, attorneys).
Mr. Simon L. Rosenbach, Assistant Prosecutor, argued the cause for respondent (Mr. Stephen R. Champi, Somerset County Prosecutor, attorney).
The opinion of the court was delivered by LYNCH, P.J.A.D.
Defendant appeals from his conviction of having violated the compulsory insurance provision of N.J.S.A. 39:6B-2. In pertinent part that statute provides that "Any owner, or registrant of a motor vehicle registered or principally garaged in this State who operates or causes to be operated a motor vehicle * * * without motor vehicle liability insurance coverage * * * and any operator who operates or causes a motor vehicle to be operated and who knows" that the vehicle is without such insurance, is subject to the penalties of the statute. (Emphasis added).
Defendant was not an "owner or registrant." His conviction in the County Court on de novo review of his municipal court conviction was based on a finding that the defendant "caused" a motor vehicle "to be operated" when he knew or should have known that it was not covered by the necessary insurance.
The facts as recited in defendant's brief are not in dispute: In the beginning of the summer of 1975 Stephen Rodziniak placed an advertisement in the newspaper offering for sale a 1965 Pontiac GTO. Defendant Schumm responded to this advertisement. After some discussion he *32 agreed to purchase the vehicle for $150. Defendant gave Rodziniak an initial down-payment of approximately $30, and after some passage of time additional payments were made to bring the total payments up to $130 or $140. In either event, on September 3, 1975 defendant had not yet paid to Rodziniak the full amount of the purchase price.
At some time between the last payment and September 3, 1975 the vehicle in question was moved from Rodziniak's property to the street in front of defendant's girlfriend's house because Rodziniak's father wanted him to get the vehicle off their property.
Although defendant had thus taken custody of the vehicle, he had not fully paid the agreed upon purchase price, nor had Rodziniak delivered to defendant the certificate of ownership. The assignment of the certificate had been signed by Rodziniak but was otherwise still blank. Rodziniak had no intention of delivering title until the balance of the purchase price was paid. Thus, defendant was only in custody of the vehicle. He did not own it.
On September 3, 1975 the vehicle was being moved from its location in front of defendant's girlfriend's house to another area when it was stopped by Patrolman Mattera of the North Plainfield Police Department. Defendant was not driving the vehicle at that time but was a passenger in the right front seat. Mattera specifically identified Franklin Sananstasso as being the driver of the vehicle.
Defendant had asked Sananstasso to drive the vehicle, and at that time inquired whether Sananstasso possessed a driver's license. In response, Sananstasso exhibited something to defendant which appeared to be a driver's license. However, Sananstasso did not in fact possess a valid driver's license.
Patrolman Mattera issued three summonses against defendant, charging him with these offenses: (1) failing to have insurance, in violation of the mandatory insurance provisions of N.J.S.A. 39:6B-2; (2) allowing an unlicensed driver to operate a vehicle, in violation of N.J.S.A. 39: *33 3-39(b), and (3) having "fictitious plates," in violation of N.J.S.A. 39:3-33.
It should be added that defendant conceded that the vehicle was in his custody and that at the time of the alleged offense he was in control of the vehicle. Further, at oral argument he conceded that he "caused it to be operated."
Defendant's sole contention on appeal is that the language of the section reading, "any operator who operates or causes a motor vehicle to be operated," can only be construed to mean that one must actually be an "operator" of the vehicle as defined in N.J.S.A. 39:1-1, to be subject to the statutory provision. This argument is premised on a literal analysis of the statutory language to the effect that the noun "operator" is the antecedent of the adjective clause "who * * * causes a motor vehicle to be operated," as well as it is the antecedent of the adjective clause "who operates."
We disagree. Literally, defendant's interpretation of the statutory language is arguable. But literal interpretation of a statute is not to be accepted if it distorts the legislative intent. As the Supreme Court, speaking through Justice Mountain, said in N.J. Builders, Owners and Managers Ass'n v. Blair, 60 N.J. 330 (1972):
In reading and interpreting a statute, primary regard must be given to the fundamental purpose for which the legislation was enacted. Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter. This doctrine permeates our case law.
When all is said and done, the matter of statutory construction * * * will not justly turn on literalisms, technisms or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation. [Jersey City Chapter Prop. Owner's, etc., Assoc. v. City Council, 55 N.J. 86, 100 (1969)].
[T]he spirit of the legislative direction prevails over its terms. [Dvorkin v. Dover Tp., 29 N.J. 303, 315 (1959)].
In reviewing certain municipal legislation Justice Heher, in SanLan Builders, Inc. v. Baxendale, 28 N.J. 148, 155 (1958), observed:
These regulations are to receive a reasonable construction and application, to serve the plan and course of action of the lawgiver; and in this quest for the true intention of the law, the letter gives *34 way to the obvious reason and spirit of the expression, and to this end the evident policy and purpose of the act constitute an implied limitation on the sense of general terms and a touchstone for the expansion of narrower terms. The will of the lawgiver is to be gathered from the object and nature of the subject matter, the contextual setting, and the mischief felt and the remedy in view. Scholastic strictness is to be avoided in the search for the legislative intention. The particular terms are to be made responsive to the essential principle of the law. It is not the words but the internal sense of the act that controls. Reason is the soul of law. [at 338-339; emphasis supplied]
In an earlier case the same Justice said,
The intention emerges from the spirit and policy of the statute rather than the literal sense of particular terms. [Caputo v. The Best Foods, 17 N.J. 259, 264 (1955)]
Here the purpose of the statute was to keep uninsured vehicles off the road for the protection of the public who may be injured or damaged by their operation. To that end the statute obviously intends to penalize all those responsible for creating a situation where the statutory protection given the public is denied to them. Thus, not only is an "owner or registrant" who operates such a vehicle within the prohibition of the statute but also such "owner or registrant" who "causes to be operated" such a vehicle. In the same paragraph is the language with which we are concerned, covering the operator who operates and one who "causes a motor vehicle to be operated" and who knows or should know that it is uninsured.
To construe the language as defendant would have us do, i.e., that only one who actually physically operates is subject to the statute, would amount to a rewriting of the section as though it applies only to "any operator who operates" with excision of the language "or causes a motor vehicle to be operated." Such interpretive surgery so as to make that language superfluous and meaningless is impermissible. The language has the same significance as the previous reference to an "owner or registrant" who (a) operates *35 or (b) "causes to be operated a motor vehicle * * *," etc. State v. Canola, 135 N.J. Super. 224, 235 (App. Div. 1975), certif. den. 69 N.J. 82 (1976); Hackensack Bd. of Ed. v. Hackensack, 63 N.J. Super. 560, 569 (App. Div. 1960); Quinn v. Quinn, 118 N.J. Super. 413, 414 (Ch. Div. 1972). Defendant's interpretation would exclude from the legislative blanket of responsibility one who is not an owner, registrant or operator, but who nevertheless was in control of the car and who admitted he caused it to be operated. We find such frustration of the legislative purpose to be unacceptable.
We affirm the conviction.
ANTELL, J.A.D. (dissenting).
The statutory language under which defendant was convicted provides a punishment for any "operator" who operates or causes a motor vehicle to be operated. Defendant was not an operator. He was a passenger, and his legal relationship to the vehicle was at most that of a bailee. It is hardly an exercise in "scholastic strictness" to observe that these facts clearly lie outside the reach of the statute. The majority, however, affirms the conviction on the ground that defendant, even though not the operator, "was in control of the car." From this action I respectfully dissent. In my view, by substituting the status of being "in control" for that of being the "operator," the court has unwarrantably extended the plainly expressed legislative intent.
While I appreciate the interest of the court in fulfilling the underlying purpose of the law, this may only be done in accordance with long-settled rules of statutory construction. The first of these is that a clear and unambiguous statute is not open to construction or interpretation. To employ these methods in a case where not required violates the doctrine of separation of powers. Watt v. Mayor, etc., Franklin, 21 N.J. 274, 277 (1956). Courts must give effect to the language employed by the legislative body. Dixon v. Gassert, 26 N.J. 1, 9 (1958).
*36 It is elementary that the intent of the legislature is to be gleaned from the language of its statutes. We cannot arbitrarily expand the scope of any statute beyond the plainly expressed legislative intent. [Pacific Discount Co. v. Powell, 70 N.J. Super. 156, 159 (App. Div. 1961)]
We are not free to take liberties with clearly expressed statutory language "even to subserve a supposedly desirable social policy not effectuated by the act as written." R.H. Macy & Co. v. Director, Div. of Taxation, 77 N.J. Super. 155, 173 (App. Div. 1962). Arguments offered as a guide to the probable legislative intent cannot prevail against plain statutory language to the contrary. Id. at 174.
Although I agree that the statute's purpose is to keep uninsured vehicles off the road, we are limited to those measures which the lawmakers stated were sufficient to achieve this goal. They enumerated penalties only for owners, registrants and operators, and defendant was none of these. Nowhere do they speak of persons "having control or custody of a motor vehicle," as they did, for example, in N.J.S.A. 39:3-39, which provides penalties against such individuals for allowing a motor vehicle to be operated by an unlicensed driver. The omission of such language in this instance, therefore, could not have been inadvertent, and it is fundamental that what the Legislature omits the courts cannot supply. Craster v. Newark Bd. Comm'rs., 9 N.J. 225, 230 (1952); 73 Am. Jur.2d, Statutes, § 203. The power to insert words and clauses, where it exists, is exercised with "unusual caution"; it is "`* * * a dangerous business to fill in the text of a statute from its purposes * * *.'" 2A Sutherland, Statutory Construction (4th Ed. 1973), § 47.38 at 172.
It is far better to wait for necessary corrections by those authorized to make them, or, in fact, for them to remain unmade, however desirable they may be, than for judicial tribunals to transcend the just limits of their constitutional powers. [Railroad Comm'n of Indiana v. Grand Trunk Western R. Co., 179 Ind. 255, 100 N.E. 852, 855 (Sup. Ct. 1913)]
*37 There is nothing in N.J. Builders, Owners and Managers Ass'n v. Blair, 60 N.J. 330 (1972), relied on by the majority, inconsistent with the foregoing principles. In that case the Division on Civil Rights had promulgated a regulation requiring certain landlords to file annual reports showing the racial designation of their tenants. This was argued to be in conflict with the Law Against Discrimination, N.J.S.A. 10:5-1 et seq., which prohibited the making of any inquiry as to the racial makeup of any tenant or applicant. The Court simply ruled, in effect, that reading both in light of the mischief to be suppressed, there was no conflict between the two since they were animated by the same broadly remedial purpose. The case did not involve the extension of a penal statute to cover a situation not encompassed by its language and is therefore inapposite.
The device exploited by the majority to enlarge the scope of the statute appears to be the ambiguity apparent in the concept of an "operator who * * * causes a motor vehicle to be operated." Since it is unclear to the majority in what way an operator can cause a vehicle to be operated except by operating it,[1] it reasons that the clause "causes a motor vehicle to be operated" is intended to deal with others who may be "in control" of the car. But with its mandatory provision for three months imprisonment this is a highly penal statute, and a prosecution for violation thereof is a quasi-criminal action. State v. Cooper, 129 N.J. Super. 229, 231 (App. Div. 1974). The ambiguity, if such it is, was not created by the defendant certainly, and therefore if interpretation must be resorted to, it is the rule of strict construction which governs, and which bars liability "when the words of the enactment are not clear in fixing it." State v. Mundet Cork Corp., 8 N.J. 359, 365 (1952); State v. Fair Lawn Service Center, Inc., 20 N.J. 468, 472 (1956); *38 1 Schlosser, Criminal Laws of New Jersey (3 ed. 1970), § 5:5; 3 Sutherland, Statutory Construction (4th Ed. 1974), § 59.03.
"Penal laws must be clear enough so that `* * * all men subject to their penalties may know what acts it is their duty to avoid. * * * Before a man can be punished, his case must be plainly and unmistakably within the statute.'" State v. Caez, 81 N.J. Super. 315, 319 (App. Div. 1963). They "`are not to be regarded as including anything which is not within their letter as well as their spirit, which is not clearly and intelligently described in the very words of the statute, as well as manifestly intended by the legislature.'" State v. Cannizzaro, 133 N.J.L. 383, 384 (E. & A. 1945).
The rule of strict construction, which has been described as "not less old than construction itself,"
`* * * is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative not the judicial department.' [State v. Woodruff, 68 N.J.L. 89, 93 (Sup. Ct. 1902) citing United States v. Wiltberger, 18 U.S. (5 Wheat) 76, 92, 5 L.Ed. 37, 42 (1820) (Marshall, C.J.)]
Thus, whether ambiguous or unambiguous, the statute simply does not cover this defendant. If unambiguous he is clearly omitted, and if ambiguous the doubtful meaning must be resolved in his favor. 73 Am. Jur.2d, Statutes, § 295, at 453.
Like the majority of the court I, too, sense that the defendant is in some way blameworthy in this situation. But as a judicial body we are committed to the application of clearly defined standards, and I am unable to identify any standards contained in this statute by which his penal liability may be measured. In setting out to advance an underlying legislative policy the majority brings to this undertaking criteria no more precise and workable than a claimed legislative mandate "to penalize all those responsible for creating a situation where the statutory protection *39 given the public is denied to them." From where in the statute this is derived is difficult to understand, for the Legislature did not express itself with such singular breadth. It spoke with respect to persons who were "responsible for creating [the] situation" only in clearly specified ways.
Where the Legislature so carefully singled out owners, registrants and operators, it should not be inferred that it intended its labors to be supplemented by sweeping judicial pronouncements which would take care of all the intermediate cases as to which the Legislature kept silent. Obviously, if the law-making body had so broad a purpose in mind, it could have said so in the very words chosen by the majority. One reason it did not do so might be its manifestly unconstitutional vagueness and uncertainty. But if such a standard is invalid within the context of a legislative enactment, I would think it is no less so where promulgated as part of a judicial interpretation.
Since defendant was neither the owner, the registrant, nor the operator of the motor vehicle, I would hold that he is not answerable for causing it to be operated without motor vehicle liability insurance.
I would reverse.
NOTES
[1] One example of what might have been in the legislative contemplation is the use of a dual controlled car occupied by an instructor and a student.