plaintiff's challenge to the rezoning of the property he has contracted to purchase.

Accordingly, the part of the summary judgment dismissing plaintiff's challenge to Hoboken's determination that the industrial area in the northwest section of the City is in need of redevelopment is affirmed. The part of the summary judgment rejecting plaintiff's challenge to the redevelopment plan is reversed, and the case is remanded to the trial court for further proceedings in conformity with this opinion.

766 A.2d 813

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JENNIFER HAYDUCKA, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 31, 2000—Decided February 15, 2001.

Before Judges STERN, RODRÍGUEZ and FALL.

*Sills, Cummis, Radin, Tischman, Epstein & Gross,* attorneys for appellant (*Richard J. Sapinski,* on the briefs).

*Donald C. Campolo,* Assistant Attorney General/Acting Essex County Prosecutor (*Gary A. Thomas,* Special Deputy Attorney General, on the brief).

The opinion of the court was delivered by

RODRÍGUEZ, A. A., J.A.D.

The issue presented in this appeal is whether the owner of a motor vehicle can be convicted of violating *N.J.S.A.* 39:6B–2 (causing a motor vehicle to be operated upon a public road or highway without liability insurance), when such owner has given

the keys to a third party with the instruction that the motor vehicle be operated only within a driveway on private property and only for the purpose of letting other vehicles in or out of the driveway. We hold that such conduct constitutes a violation, even in light of the conditional permission to operate the vehicle.

These are the facts. Around September 1998, defendant, Jennifer Hayducka, owned two automobiles. She intended to sell one of them, a Mercury Cougar. She decided to park the Cougar in a two-lane driveway at her mother's home while she tried to sell it. At that time, defendant was residing at a different location. She left the Cougar's keys at her mother's home in case the car needed to be moved from one side of the driveway to the other. Defendant testified that she did not give her mother permission to use the Cougar for any other purpose.

In late October 1998, defendant let the liability insurance coverage on the Cougar lapse because she was not using the car. She did not expect her mother to use the Cougar, therefore, she did not advise her that the insurance had lapsed. On November 5, 1998, defendant's mother needed to pick up a prescription. Because the family automobile was being repaired, she used the Cougar to drive to the pharmacy. She did not ask for defendant's permission. On her way home from the pharmacy, defendant's mother was involved in a collision with another motorist.

As a result of the collision, complaints were filed against defendant's mother for driving an uninsured vehicle, and against defendant for causing an uninsured vehicle to be operated upon a public road, contrary to *N.J.S.A.* 39:6B–2. Defendant was convicted in the Municipal Court of Bloomfield and again after a trial *de novo* in the Law Division. In the municipal court and the Law Division, she was sentenced to pay a $300 fine and $30 in court costs. Her driving privilege was also suspended for one year. The judgment was stayed pending appeal.

On appeal, defendant contends that there was insufficient evidence to sustain a finding of guilt against her. She argues that

there was no evidence indicating that she either intended or expected the Cougar to be operated on a public road. Therefore, she argues that the State has failed to establish a required element of the offense. We disagree.

In pertinent part, *N.J.S.A.* 39:6B–2 provides:

**Penalties for failure to carry motor vehicle insurance coverage**

Any owner or registrant of a motor vehicle registered or principally garaged in this State who operates or *causes to be operated* a motor vehicle upon any public road or highway in this State without motor vehicle liability insurance coverage required by this act, and any operator who operates or causes a motor vehicle to be operated and who knows or should know from the attendant circumstances that the motor vehicle is without motor vehicle liability insurance coverage required by this act shall be subject, for the first offense, to a fine of not less than $300 nor more than $1,000 and a period of community service to be determined by the court, and shall forthwith forfeit his right to operate a motor vehicle over the highways of this State for a period of one year from the date of conviction.... A complaint for violation of this act may be made to a municipal court at any time within six months after the date of the alleged offense.

[*N.J.S.A.* 39:6B–2 (emphasis added).]

Here, defendant admits that she decided to let the Cougar's liability insurance lapse. She also admits that she gave the keys of the Cougar to her mother with the intention that the motor vehicle be operated. She asserts, however, that her permission to operate the Cougar was conditioned by a limitation (operation only within the two-lane driveway and only on a "need" basis). For purposes of our analysis, we will assume that it was necessary to move the Cougar within the driveway area to let other vehicles enter and exit. We will also assume that it was possible to accomplish this without ever having to back onto the public road. Under such circumstances, defendant has nevertheless violated the elements of *N.J.S.A.* 39:6B–2.

Defendant's argument focuses on the issue of authority or permission to drive the Cougar. However, *N.J.S.A.* 39:6B–2 proscribes *causing,* not *authorizing,* operation of an uninsured motor vehicle on public roads.

In construing a statute, "[w]e are required to 'effectuate the legislative intent in light of the language used and the objects

sought to be achieved.' " *Wendling v. N.J. Racing Comm'n*, 279 *N.J.Super.* 477, 482, 653 *A.*2d 582 (App.Div.1995) (citing *State v. Maguire*, 84 *N.J.* 508, 514, 423 *A.*2d 294 (1980)). Courts must give effect to the language employed by the legislative body. *Dixon v. Gassert*, 26 *N.J.* 1, 9, 138 *A.*2d 14 (1958).

We now look to the language of the statute to ascertain its plain meaning. *See Town of Morristown v. Woman's Club*, 124 *N.J.* 605, 610, 592 *A.*2d 216 (1991). The verb "to cause" has been defined as "to effect as an agent, to bring about." *Webster's Unabridged New International Dictionary* 427 (2d ed.1947). Words synonymous with "to cause" include "produce, occasion, originate, induce." *Ibid.* From these definitions, we conclude that the meaning of the phrase "causes to operate" is, therefore, much broader than "authorizes to operate." The statutory term is akin to the concept of proximate cause, which has frequently been defined in our jurisprudence as "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Gaido v. Weiser*, 115 *N.J.* 310, 313, 558 *A.*2d 845 (1989).

The conclusion that the Legislature intended *N.J.S.A.* 39:6B–2 to have such a meaning is supported by the statute's objective. The obvious purpose and intent of *N.J.S.A.* 39:6B–2 is to keep uninsured vehicles off the road for the protection of the public who may be injured or damaged by their operation. *State v. Schumm*, 146 *N.J.Super.* 30, 34, 368 *A.*2d 956 (App.Div.1977), *aff'd*, 75 *N.J.* 199, 381 *A.*2d 33 (1978). Thus, the statute penalizes all those responsible for creating a situation where the statutory protection given to the public is denied to them. *Ibid.*

Here, it is clear that defendant caused the Cougar to be operated by giving possession of the vehicle and its ignition key to her mother. The interpretation urged by defendant would exclude from the legislative blanket of responsibility one who has caused another to operate an uninsured vehicle, albeit under

certain limitations. Such frustration of the legislative purposes is unacceptable. *Id.* at 35, 368 *A.*2d 956.

We affirm the conviction.

Affirmed.