20 A.3d 354

DENISE A. PERRELLI, PLAINTIFF–RESPONDENT, v. BRIDGET
PASTORELLE AND PAUL PASTORELLE, DEFENDANTS–
APPELLANTS.

Argued March 14, 2011—Decided June 1, 2011.

*Kenneth N. Lipstein* argued the cause for appellants.

*Lowell S. Miller* argued the cause for respondent.

Judge STERN (temporarily assigned) delivered the opinion of the Court.

We granted leave to appeal to decide whether *N.J.S.A.* 39:6A–4.5(a) bars a person who was injured while a passenger in her own uninsured automobile from pursuing a personal injury action to recover economic and noneconomic damages for those injuries. We hold that it does and that the complaint must be dismissed.

## I.

The following undisputed facts were developed in the defendants' motion for summary judgment.

On August 24, 2006, plaintiff Denise Perrelli (plaintiff or Perrelli) and Geovanni Velverde [1] were driving south on the Garden State Parkway, in Perrelli's uninsured vehicle. They were en route to Seaside Heights. When they left her home in Paramus, Perrelli was driving the vehicle, but after stopping at a rest area, Velverde took over the driving. Upon leaving the rest area, Perrelli's vehicle was involved in an accident with a car driven and owned, respectively, by defendants Bridget and Paul Pastorelle (defendants). As a result of the accident, Velverde was killed and

---

[1] Velverde's estate has also been named a defendant in the action but is not a party to the present appeal.

Perrelli sustained serious physical and psychological injuries including a fractured right arm and fractured fingers.

Approximately two years before the accident, Perrelli had purchased a 1992 Oldsmobile Cutlass and insured it through New Jersey Manufacturers (NJM). She initially paid the annual premiums in "installment[s] ... every three to four months." There is no dispute that Perrelli understood if she did not continue to pay the premiums the insurance would be "cancelled."

When Perrelli was first insured by NJM, she lived in Paramus where she received her premium notices. Following a divorce, she moved to another home in Paramus, notified NJM of the change of address, and received premium notices there. About a year later, however, Perrelli moved to a third home in Paramus and had been living there for "approximately eight months before the accident happened." She could not recall if she notified the post office or NJM of her last change of address or whether she received any premium notices there, but believed her insurance was still in effect on the day of the accident. However, Perrelli also believed the last time she sent NJM a premium check was either in 2004 or 2005, and she could not recall sending any premium checks to NJM while living at the third address. Perrelli's coverage remained in effect until August 4, 2006, when NJM cancelled her policy for "nonpayment of premium." The cancellation is not challenged before us.[2]

On August 22, 2008, Perrelli filed her complaint alleging that her injuries were caused by defendants' negligence. Defendants filed their answer and subsequently moved for summary judg-

---

[2] Subsequent to the filing of this action, Perrelli was "evicted" from her home and lost all her belongings, including any files regarding her insurance coverage. Her bank accounts were also "closed," and she had no cancelled checks showing payments. As a result of the accident, Perrelli also has had difficulty recalling facts. According to plaintiff, "[t]he accident just ended [her] life." On the other hand, in her brief filed in this Court, plaintiff states, without reference to the record, that "[i]t appears that the last payment to NJM was only two months prior to the cancellation notice."

ment, asserting that *N.J.S.A.* 39:6A–4.5(a) barred the action. The trial court denied defendants' motion and the Appellate Division denied defendants' motion for leave to appeal. However, we granted defendants' motion for leave to appeal to us. *Perrelli v. Pastorelle*, 204 *N.J.* 33, 6 *A.*3d 438 (2010).

## II.

The statute in question reads, in relevant part:

Any person who, at the time of an automobile accident resulting in injuries to that person, is required but fails to maintain medical expense benefits coverage [mandated by *N.J.S.A.* 39:6A–4 or *N.J.S.A.* 39:6A–3.1] shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured automobile.

[*N.J.S.A.* 39:6A–4.5(a) (emphasis added).]

The issue presented is whether the phrase "while operating" requires plaintiff herself to have been actually driving her uninsured automobile at the time of the accident. There is no statutory definition for the term "operate" or "operating," but *N.J.S.A.* 39:1–1 defines "operator" as "a person who is in actual physical control of a vehicle or street car."

Defendants assert that *N.J.S.A.* 39:6A–4.5(a) bars plaintiff's claim. They argue that it is irrelevant that Perrelli was not physically driving the car, because it was uninsured. According to defendants,

[c]learly, the same legislative purpose of deterring the operation of uninsured motor vehicles, and precluding injured persons who caused the operation of an uninsured motor vehicle and did not contribute to the insurance pool from collecting it, apply equally whether the person seeking recovery for injury is the driver of his or her own uninsured vehicle, or a passenger in it. Each involves an equal attempt to drain from the insurance pool without contributing to it, and each involves an equal violation of the law.

Defendants further contend that it is the express intent of the Legislature to treat one operating and one who causes an uninsured vehicle to be operated equally. They rely, in part, on the Appellate Division opinion in *Dziuba v. Fletcher*, 382 *N.J.Super.* 73, 887 *A.*2d 732 (App.Div.2005), *aff'd o.b.*, 188 *N.J.* 339, 907 *A.*2d 427 (2006), in support of their contention that the statute does not

require the owner or registrant to actually be driving an uninsured vehicle.

Plaintiff concedes she is not entitled to "personal injury protection" (PIP) "medical benefits" from her carrier because her policy had been cancelled, *see also N.J.S.A.* 39:6A–7(b)(1); but she insists that she is entitled to pursue her other economic and noneconomic claims. Plaintiff argues the Court should interpret *N.J.S.A.* 39:6A–4.5(a) by its "clear and unambiguous meaning," to preclude recovery if, but only if, she was physically "operating the vehicle." In plaintiff's words, "[i]f you are operating your uninsured vehicle, you cannot bring a lawsuit for economic or non[ ]economic loss. The Legislature was clear and direct on this issue. There is no mention at all regarding allowing your uninsured vehicle to be driven." Plaintiff notes that *N.J.S.A.* 39:6A–4.5 has been amended three times since it was first enacted in 1985 and the "Legislature never put in any language equivalent to what is contained in *N.J.S.A.* 39:6B–2 applying equally to one who 'operates *or causes to be operated*' an uninsured vehicle." Thus, plaintiff argues, the Legislature could have precluded her recovery but chose not to do so.[3]

In addition, plaintiff argues that courts "have been reluctant to expand the scope of the legislative language beyond its terms." For this proposition, she cites *Walcott v. Allstate New Jersey Insurance Co.,* 376 *N.J.Super.* 384, 392, 870 *A.*2d 691 (App.Div. 2005), in which the Appellate Division found "no basis in the statutory scheme or legislative history to apply Section 4.5's bar to the recovery by drunk drivers of economic and non[ ]economic losses to PIP benefits as well."

Finally, plaintiff argues that the statute makes clear the uninsured person must be "culpably" or knowingly "uninsured," which,

---

[3] Plaintiff also relies on the majority opinion in *Aronberg v. Tolbert,* 413 *N.J.Super.* 562, 571, 997 *A.*2d 246 (App.Div.2010), noting that *N.J.S.A.* 39:6A–4.5(a) applies "only when [t]he driver is injured while driving the vehicle." *Aronberg* is now pending before this Court. *See Aronberg v. Tolbert,* 203 *N.J.* 432, 3 *A.*3d 1223 (2010).

according to plaintiff, means "deserving of blame or censure as being wrong, evil improper, or injurious." Because it was her belief the vehicle was insured, plaintiff asserts her claims cannot be barred because she was not "culpably uninsured."

## III.

### A.

Because this issue comes to us following the denial of a motion for summary judgment, we "employ the same standard [of review] that governs the trial court." *Henry v. Dep't of Human Servs.*, 204 *N.J.* 320, 330, 9 *A.*3d 882 (2010) (quoting *Busciglio v. DellaFave*, 366 *N.J.Super.* 135, 139, 840 *A.*2d 897 (App.Div.2004)). It is well known that summary judgment should be granted only if the record demonstrates there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." *R.* 4:46–2(c); *Henry, supra,* 204 *N.J.* at 330, 9 *A.*3d 882; *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." *R.* 4:46–2(c); *Henry, supra,* 204 *N.J.* at 330, 9 *A.*3d 882. Moreover, where, as here, there is no genuine dispute of fact the trial court's ruling on the legal question is "not entitled to any special deference." *Manalapan Realty L.P. v. Manalapan Twp.*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995); *see also Henry, supra,* 204 *N.J.* at 330, 9 *A.*3d 882.

When interpreting the language of *N.J.S.A.* 39:6A–4.5(a), we must undertake to "ascertain the intent of the Legislature." *Hardy v. Abdul–Matin,* 198 *N.J.* 95, 101, 965 *A.*2d 1165 (2009); *see also Marino v. Marino,* 200 *N.J.* 315, 329, 981 *A.*2d 855 (2009); *Lee v. First Union Nat'l Bank,* 199 *N.J.* 251, 258, 971 *A.*2d 1054 (2009). Ordinarily, "the best indicator of that intent is the statuto-

ry language" itself, *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005), and courts should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." *Hardy, supra*, 198 *N.J.* at 101, 965 *A.*2d 1165. Therefore, the first step in determining the Legislature's intent is to "look at the plain language of the statute." *Hubbard v. Reed*, 168 *N.J.* 387, 392, 774 *A.*2d 495 (2001). Courts are cautioned against "rewrit[ing] a plainly-written enactment of the Legislature or presum[ing] that the Legislature intended something other than that expressed by way of the plain language." *Hardy, supra*, 198 *N.J.* at 101, 965 *A.*2d 1165; *see also Marino, supra*, 200 *N.J.* at 329, 981 *A.*2d 855. If the language is "clear on its face," courts should "enforce [the statute] according to its terms." *Hubbard, supra*, 168 *N.J.* at 392, 774 *A.*2d 495 (quoting *Sheeran v. Nationwide Mut. Ins. Co.*, 80 *N.J.* 548, 556, 404 *A.*2d 625 (1979)).

However, "where a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control." *Hubbard, supra*, 168 *N.J.* at 392, 774 *A.*2d 495 (quoting *Turner v. First Union Nat'l Bank*, 162 *N.J.* 75, 84, 740 *A.*2d 1081 (1999)); *see also New Jersey Builders, Owners, & Managers Ass'n. v. Blair*, 60 *N.J.* 330, 338, 288 *A.*2d 855 (1972) ("Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter."); *Dvorkin v. Twp. of Dover*, 29 *N.J.* 303, 315, 148 *A.*2d 793 (1959) ("[T]he spirit of the legislative direction prevails over its terms."). Thus, we have held that "when all is said and done, the matter of statutory construction ... will not justly turn on literalisms, technisms, or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation." *Jersey City Chapter, P.O.P.A. v. Jersey City*, 55 *N.J.* 86, 100, 259 *A.*2d 698 (1969). Accordingly, "when a 'literal interpretation of individual statutory terms or provisions' would lead to results 'inconsistent with the overall purpose of the statute,' that interpre-

tation should be rejected." *Hubbard, supra,* 168 *N.J.* at 392–93, 774 *A.*2d 495; *see also Lee, supra,* 199 *N.J.* at 258, 971 *A.*2d 1054. We address the issue before us with these principles in mind.

## B.

To reduce the cost of automobile insurance, protect victims of automobile accidents and reduce public expenditures when accidents are caused by judgment-proof tortfeasors, New Jersey requires "[a]ll owners of motor vehicles registered or principally garaged in [the State] . . . to maintain minimum amounts of . . . insurance coverage for bodily injury, death, and property damage caused by their vehicles." *Caviglia v. Royal Tours of Am.,* 178 *N.J.* 460, 466, 842 *A.*2d 125 (2004); *see also N.J.S.A.* 39:6B–1. Every insurance policy must include PIP benefits, which guarantee "without regard to fault," medical expense coverage for the named insured and members of his or her household. *Caviglia, supra,* 178 *N.J.* at 466, 842 *A.*2d 125; *see also N.J.S.A.* 39:6A–4. This system was implemented in 1972 through the New Jersey Automobile Reparation Reform Act (the No Fault Act), *N.J.S.A.* 39:6A–1 to –35. *Caviglia, supra,* 178 *N.J.* at 466, 842 *A.*2d 125. The No Fault Act "intended to serve as the exclusive remedy for payment of out-of-pocket medical expenses arising from an automobile accident." *Ibid.* It was designed to promote four objectives: "(1) providing benefits promptly and efficiently to all accident injury victims (the *reparation* objective); (2) reducing or stabilizing the cost of automobile insurance (the *cost* objective); (3) making insurance coverage readily available for automobile owners (the *availability* objective); and (4) streamlining judicial procedures involved in third-party claims (the *judicial* objective)." *Id.* at 467, 842 *A.*2d 125. The No Fault Act placed several restrictions on the right to sue, which were considered a "trade-off for lower premiums and prompt payment of medical expenses." *Ibid.*

After its enactment, the No Fault Act provided swift payment to accident victims but "failed to curb increasing insurance costs and to relieve congestion of court calendars." *Id.* at 468, 842 *A.*2d 125.

As a result, the Legislature continued to adopt new legislation to achieve these goals and, in 1984, enacted the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act, *N.J.S.A.* 17:28–1.1 (the Cost Containment Act), for "the purpose of making automobile insurance more affordable and available to members of the public." *Ibid.* In addition to reducing premium costs "by increasing deductibles and reducing benefits," the Cost Containment Act "enlarged the class of people to be excluded from PIP coverage entirely." *Ibid.* That is, vehicle owners who did not maintain PIP coverage and were injured through their own "intentional or criminal conduct" could not recover PIP benefits. *Id.* at 469, 842 *A.*2d 125. Denying PIP benefits to this class of people "was a part of the larger goal of controlling the cost of insurance to the public." *Ibid.*

"In 1985, the Legislature enacted *N.J.S.A.* 39:6A–4.5, which imposed restrictions on the right of an uninsured driver to sue for noneconomic damages" from third parties. *Ibid.* It required those drivers to "satisfy the most onerous monetary threshold [$1,500] before [they were] entitled to pursue a suit for noneconomic damages." *Ibid.* A 1988 amendment required uninsured drivers to meet the new verbal threshold, which required "a more exacting standard of proving death or severe bodily injury." *Id.* at 470, 842 *A.*2d 125. The verbal threshold became "an important barrier designed to keep insurance costs down." *Ibid.* (internal quotations and citation omitted). The last substantive amendments to *N.J.S.A.* 39:6A–4.5 were made in 1997.[4] *Ibid.* As a result of the amendments, *N.J.S.A.* 39:6A–4.5 (as at the time of the accident) now bars three specific classes of people from recovering for personal injuries:

the culpably uninsured (those vehicle owners required by statute to maintain PIP coverage but who have failed to do so) when injured while operating an uninsured vehicle, a person who pleads guilty to, or is convicted of, driving while intoxicated

---

[4] The Legislature again amended *N.J.S.A.* 39:6A–4.5 in 1998 and 2003, but these were both technical amendments that did not change the substance of the statute. *Caviglia, supra,* 178 *N.J.* at 471, n. 5, 842 *A.*2d 125.

in connection with the accident that resulted in that person's injuries, and a person who acted with the specific intent to cause injury to himself or another person.

[Craig & Pomeroy, *New Jersey Auto Insurance Law* § 15:5 at 305 (Gann, 2011).]

As already noted, *N.J.S.A.* 39:6A–4.5(a) was designed to further the cost and judicial objectives of the No Fault Act. *Rojas v. DePaolo*, 357 *N.J.Super.* 115, 119, 813 *A.*2d 1288 (Law Div.2002). The Legislature reasoned that *N.J.S.A.* 39:6A–4.5(a) would "produce greater compliance with compulsory insurance laws and, in turn, reduce litigation, and result in savings to insurance carriers and ultimately the consuming public" by reduced premiums. *Caviglia, supra,* 178 *N.J.* at 477, 842 *A.*2d 125. Thus, the Legislature wanted to ensure that "an injured, uninsured driver does not draw on the pool of accident-victim insurance funds to which he [or she] did not contribute." *Id.* at 471, 842 *A.*2d 125. As a result, *N.J.S.A.* 39:6A–4.5(a) provides "a very powerful incentive to comply with [the requirements of] the compulsory insurance laws ... or lose the right to maintain a suit for both economic and noneconomic damages." *Ibid.*

## IV.

Given the purpose of *N.J.S.A.* 39:6A–4.5(a), there can be no doubt that the Legislature wanted to assure that all automobiles were covered by compulsory insurance by precluding those who do not have the required coverage from recovering from others merely by having someone else drive their car. Because statutes should be read in order to "give sense to the legislation as a whole," *Hardy, supra,* 198 *N.J.* at 101, 965 *A.*2d 1165, it is instructive to review other sections of title 39, dealing with the compulsory automobile insurance law, which are designed to achieve the same result.

*N.J.S.A.* 39:6A–7 states:

b. An insurer may also exclude from benefits ... any person having incurred injuries or death, who, at the time of the accident:

(1) was the owner or registrant of an automobile registered or principally garaged in this State that *was being operated* without personal injury protection coverage.

[*N.J.S.A.* 39:6A–7 (b)(1) (emphasis added).] [5]

Our courts have precluded a person from collecting PIP benefits under *N.J.S.A.* 39:6A–7(b)(1) simply because he or she was the owner of an uninsured automobile at the time of an accident even when the accident occurred in someone else's insured vehicle. *Liberty Mut. Ins. Co. v. Hyman,* 334 *N.J.Super.* 400, 412, 759 *A.*2d 894 (Law Div.2000); *see also Gibson v. New Jersey Mfrs. Ins. Co.,* 261 *N.J.Super.* 579, 585, 619 *A.*2d 636 (App.Div.1993) (stating that if an insurer comes forward with evidence that owner or registrant of vehicle does not have PIP coverage, "a prima facie case of exclusion has been established"). The owner need not be "actually operating the unprotected vehicle." *Gibson, supra,* 261 *N.J.Super.* at 585, 619 *A.*2d 636. Another provision of New Jersey's Compulsory Motor Vehicle Insurance Law, *N.J.S.A.* 39:6B–1 to –3, makes it an offense for "[a]ny owner or registrant of a motor vehicle registered or principally garaged in this State *who operates or causes to be operated* a motor vehicle upon any public road or highway in this State without motor vehicle liability insurance coverage required by this act." *N.J.S.A.* 39:6B–2 (emphasis added); *see also N.J.S.A.* 39:4–50 (prohibiting one from permitting a drunk driver to operate vehicle).

In *Dziuba,* the plaintiffs were passengers in the defendants' insured automobile when it was involved in an accident. *Dziuba, supra,* 382 *N.J.Super.* at 76, 887 *A.*2d 732. At the time of the accident, the plaintiffs owned and regularly drove three uninsured automobiles that were not involved in the accident at issue. *Ibid.* First, the Appellate Division held that the plaintiffs were "culpably uninsured" because they did not insure their own vehicles, and therefore, could not recover PIP benefits or damages for economic loss pursuant to *N.J.S.A.* 39:6A–7(b)(1). *Id.* at 82, 887 *A.*2d 732. However, "whether [the plaintiffs were] actually operating one of [their] uninsured vehicles at the time of the accident" was relevant

---

[5] *N.J.S.A.* 39:6A–7 deals with first party claims (PIP coverage) while *N.J.S.A.* 39:6A–4.5 deals with third party claims. *See Walcott, supra,* 376 *N.J.Super.* at 389–90, 870 *A.*2d 691.

to whether the plaintiffs were barred pursuant to *N.J.S.A.* 39:6A–4.5(a) from recovering for noneconomic losses. *Id.* at 80, 887 *A.*2d 732. Second, the Appellate Division held that the plain language of *N.J.S.A.* 39:6A–4.5(a) required "the uninsured vehicle be involved in the accident." *Id.* at 81, 887 *A.*2d 732. The panel found support in that conclusion in the subsequent sections to *N.J.S.A.* 39:6A–4.5, and stated that "[e]ach of the subsections imposes the harsh penalty of exclusion upon drivers in three categories, all tied to the use of their vehicle in the particular accident for which damages are claimed." *Id.* at 82, 887 *A.*2d 732.

The *Dziuba* court did not decide whether *N.J.S.A.* 39:6A–4.5(a) required the "culpably uninsured" plaintiff to actually be driving the uninsured vehicle at the time of the accident; it only requires that the uninsured vehicle be involved in the accident for the plaintiff to be barred from recovering noneconomic damages. *Ibid.* Plaintiffs were barred from recovering PIP and economic benefits simply by virtue of their ownership of uninsured vehicles. *Id.* at 80–82, 887 *A.*2d 732.

In *Dziuba*, the uninsured vehicles were not involved in the accident. *Id.* at 76–77, 887 *A.*2d 732. However, because the plaintiffs regularly drove their uninsured vehicles, the Appellate Division held that *N.J.S.A.* 39:6A–7(b)(1) precluded the plaintiffs from recovering PIP benefits since their uninsured cars were being operated around the time of the accident. *Id.* at 80, 887 *A.*2d 732. The panel then turned its attention to the plaintiffs' claims for noneconomic losses and the bar of *N.J.S.A.* 39:6A–4.5(a). *Id.* at 80–82, 887 *A.*2d 732. It held that "the uninsured vehicle *must be the vehicle involved* in the accident to preclude its owner/registrant from recovering non[ ]economic damages." *Id.* at 81, 887 *A.*2d 732 (emphasis added). The Appellate Division reviewed all three sections of *N.J.S.A.* 39:6A–4.5 as a whole and determined that each section imposed exclusions based on "the use of [the] vehicle in the particular accident for which damages are claimed." *Id.* at 82, 887 *A.*2d 732.

We affirmed the judgment of the Appellate Division substantially for the reasons expressed in its opinion. *Dziuba v. Fletcher,* 188 *N.J.* 339, 907 *A.*2d 427 (2006). We added that the "plaintiff, an uninsured motorist, was not operating his uninsured vehicle when he was injured in an accident involving [the] defendant's car," so that *N.J.S.A.* 39:6A–4.5(a) did not preclude his recovery of "non-economic damages under a [tortfeasor] defendant's policy of automobile insurance." *Id.* at 340, 907 *A.*2d 427.

Thus, it was the fact that the uninsured vehicle was not involved in the accident, and not whether the culpably uninsured person was driving or "operating" the vehicle at the time of the accident, that led to the Appellate Division's conclusion which we affirmed. Commentators on New Jersey Automobile Insurance Law have expressed it as follows:

> The mere fact that a person owns a vehicle that is being operated without insurance around the time of an accident disqualifies that person from PIP coverage regardless of whether the person's vehicle is involved in the accident; *unless the uninsured vehicle is actually involved in the accident,* however, the culpably uninsured person is not barred from making a claim for personal injuries, *see N.J.S.A.* 39:6A–4.5 (a). In other words, an uninsured driver injured in someone else's insured car is better off than if he were injured while operating his or her own, uninsured car. If injured in another, insured, car, the uninsured car owner is barred from collecting PIP benefits but not barred from making a claim for economic and noneconomic losses.
>
> [Craig & Pomeroy, *supra,* § 15:5 at 306 (emphasis added).]

In *State v. Schumm,* the defendant was convicted of having violated the compulsory insurance provision of *N.J.S.A.* 39:6B–2. 146 *N.J.Super.* 30, 31, 368 *A.*2d 956 (App.Div.1977), *aff'd o.b.,* 75 *N.J.* 199, 381 *A.*2d 33 (1978). There, the defendant was attempting to purchase a vehicle. *Ibid.* At some time prior to the passage of title, the vehicle was moved from the seller's property to the street in front of the home of [the] defendant's girlfriend. *Id.* at 32, 368 *A.*2d 956. The defendant had not fully paid for the vehicle or received its title. *Ibid.* As the vehicle was being moved from the street by the home of [the] defendant's girlfriend, it was stopped by the police. *Ibid.* The defendant was not driving but was in the passenger seat when the car was stopped. *Ibid.* Although the defendant was not an owner or registrant as re-

quired by the statute, his conviction was based upon a finding he "caused" the vehicle "to be operated" when he knew or should have known it was uninsured. *Id.* at 32–33, 368 *A.*2d 956. On appeal, the defendant conceded he caused the vehicle to be operated, but he challenged that the language "any operator who operates or causes a motor vehicle to be operated" had to be construed to mean he must actually have been an "operator" as defined by *N.J.S.A.* 39:1–1. *Id.* at 33, 368 *A.*2d 956.

The Appellate Division disagreed. Although the majority opinion stated the defendant's view was "arguable," it added that the "literal interpretation of a statute is not to be accepted if it distorts the legislative intent." *Id.* at 33, 368 *A.*2d 956. The panel noted—and we agreed—the statute's purpose was "to keep uninsured vehicles off the road for the protection of the public who may be injured or damaged by their operation." *Id.* at 34, 368 *A.*2d 956. Moreover,

> the statute obviously intends to penalize all those responsible for creating a situation where the statutory protection given the public is denied to them. Thus, not only is an "owner or registrant" who operates such a vehicle within the prohibition of the statute but also such "owner or registrant" who "causes to be operated" such a vehicle. In the same paragraph is the language in which we are concerned, covering the operator who operates and one who "causes a motor vehicle to be operated" and who knows or should know that it is uninsured.
>
> To construe the language as defendant would have us do, i.e., that only one who actually physically operates is subject to the statute, would amount to a rewriting of the section as though it applies only to "any operator who operates" with excision of the language "or causes a motor vehicle to be operated." Such interpretive surgery so as to make that language superfluous or meaningless is impermissible.
>
> [*Ibid.*]

The subsequent amendments to *N.J.S.A.* 39:6B–2 did not affect the critical language of the statute or the holding of *Schumm* which we adopted. 75 *N.J.* at 199, 381 *A.*2d 33. While *N.J.S.A.* 39:6B–2 contains the "causes to be operated" language, the case is significant in underscoring the legislative purpose of chapter 6 as a whole.

Finally, in *Caviglia* we rejected a claim that *N.J.S.A.* 39:6A–4.5(a) was unconstitutional because it "preclude[d] [plaintiff] from

suing the tortfeasor for noneconomic damages, such as pain and suffering." 178 *N.J.* at 464–65, 842 *A.2d* 125. Justice Albin emphasized that the Legislature wanted to ensure that "an injured, uninsured driver does not draw on the pool of accident-victim insurance funds to which he did not contribute." *Id.* at 471, 842 *A.2d* 125. Thus, *N.J.S.A.* 39:6A–4.5(a) provides that the vehicle owner comply with compulsory insurance laws or lose the right to sue for economic and noneconomic damages. *Id.* at 477, 842 *A.2d* 125. The incentive to comply with the law and maintain automobile insurance is just as powerful if the culpably uninsured is the driver or passenger in his own uninsured vehicle. There is no rational basis to allow third party recovery because the plaintiff-owner was not herself driving the car.

A literal reading of the statute in this case, to only bar recovery if the individual was actually driving, would be contrary to the public policy as described in *Caviglia*. It would lead to "a manifestly absurd result," *Hubbard, supra*, 168 *N.J.* at 392, 774 *A.2d* 495. As this Court so well stated over fifty years ago:

> It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms."
>
> [*New Capitol Bar & Grill Corp. v. Div. of Emp't Sec.*, 25 *N.J.* 155, 160, 135 *A.2d* 465 (1957) (citations omitted).]

*N.J.S.A.* 39:6A–4.5(a) provides that an individual is barred from recovery if injured "while operating" an uninsured vehicle. A literal interpretation would construe the provision as applying only to a driver of the automobile, and would allow the culpably uninsured person to violate the law and not suffer its consequences. We thus hold that the preclusion of recovery contained in *N.J.S.A.* 39:6A–4.5(a) applies to the owner of an uninsured vehicle whether injured as a driver or passenger.

## V.

As plaintiff's claim for damages based on personal injuries is barred, we reverse the denial of summary judgment. The matter is therefore remanded to the Law Division for entry of judgment dismissing the complaint.

*For reversal and remandment*—Chief Justice RABNER, Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO, HOENS and Judge STERN (temporarily assigned)—7.

*Opposed*—None.